UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| JOYCE C. STAPLES | CIVIL ACTION NO. 04-2607-A |
|---|---|
| -vs- | JUDGE DRELL |
| BRIAN RECKAMP, GREGG RAIFF, PROCTOR AND GAMBLE PINEVILLE, CEO PROCTOR AND GAMBLE PINEVILLE AND PROCTOR AND GAMBLE, INC. THROUGH ITS CEO AND BOARD OF DIRECTORS | MAGISTRATE JUDGE KIRK |

## R U L I N G

Before the Court is Defendant Proctor and Gamble Manufacturing Company's[1] Second Motion for Summary Judgment filed on May 26, 2006.[2] Plaintiff, Joyce Staples, opposes the motion.[3] The Court finds that there is no need for oral argument in this matter. For the reasons set forth herein, Defendant's Second Motion for Summary Judgment is DENIED.

---

[1] The First Motion for Summary Judgment was filed by Defendants Proctor and Gamble Manufacturing Company, Harry Reynolds, Brian Reckamp, Greg Raiff, and Todd Hoffman on June 28, 2005. On August 1, 2005 this Court dismissed all claims against Harry Reynolds, Brian Reckamp, Greg Raiff, and Todd Huffman with prejudice. Therefore, Proctor and Gamble Manufacturing Company is the only remaining defendant bringing the Second Motion for Summary Judgment.

[2] Record, Document # 49

[3] Record, Document # 57

## BACKGROUND

Ms. Staples, an African-American female, was employed by Proctor & Gamble Manufacturing Company (hereinafter Defendant) from June 18, 1990 through December 2002.[4] While employed with Defendant, Ms. Staples experienced an allergic reaction to chemical enzymes in the laundry detergent that she was required to handle as part of her job. Ms. Staples asserts that she informed her supervisors about the problem, but no attempts were made to place her in another job.[5] Ms. Staples further asserts that other appropriate positions were available and that other similarly situated Caucasian employees were accommodated.[6] Instead, pursuant to her physician's instructions, Ms. Staples was placed on paid disability from September 2000 through her termination in December 2002.[7]

On October 22, 2003, Ms. Staples filed a formal "Charge of Discrimination" with the Equal Employment Opportunity Commission (hereinafter EEOC) alleging

---

[4] The exact date of Plaintiff's termination is disputed between the parties. However, the parties agree to the following facts leading up to her termination. In mid-October of 2002, Ms. Staples received a letter dated October 9, 2002 from Larry Brunner (Defendant's Human Resources Manager) informing her that her employment would be terminated by the close of business on December 12, 2002, unless her physician lifted her work restrictions. Thereafter, sometime in December of 2002, Ms. Staples received a letter dated December 12, 2002, notifying her that because her physician had not lifted her work restrictions her employment with Defendant was terminated as of the close of business on that day (December 12, 2002).

[5] Record, Document # 1

[6] Record, Document # 1

[7] Record, Document # 27 exhibit 7

that she suffered race and disability discrimination in violation of the Civil Rights Act of 1965, 42 U.S.C. § 2000e, *et seq.* (hereinafter Title VII), and the Americans with Disabilities Act, 29 U.S.C. § 12101, *et seq.* (hereinafter ADA). She also claimed that Defendant discriminated against her on the basis of her race and sex in violation of the Louisiana Employment Discrimination Law, La. Rev. Stat. § 23:301, *et seq.* After completing the administrative remedy process, Ms. Staples (hereinafter Plaintiff) received a right-to-sue letter and subsequently filed suit on August 31, 2004.[8]

Following this Court's ruling on Defendant's First Motion for Summary Judgment, the only claims remaining are any timely filed federal race and disability claims.[9] Defendant filed the instant motion seeking to have all remaining claims dismissed based on Plaintiff's failure to file timely her EEOC charge.[10]

## ANALYSIS

SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure mandates that a summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file . . . together with the

---

[8] Record, Document # 1

[9] Record, Document # 39

[10] Record, Document # 49

3

>affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986).

If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2551-53 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992).

TITLE VII and the ADA

Plaintiff alleges that she suffered race and disability discrimination in violation of Title VII and the ADA. Both Title VII and the ADA require that an aggrieved employee file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1);

42 U.S.C. § 12117(a). However, in a deferral state,[11] like Louisiana, a plaintiff is required to file his charge with the EEOC within 300 days of learning of the allegedly adverse employment action. Washington v. Patlis, 868 F.2d 172, 175 (5th Cir. 1989).

In the present case, to determine whether Plaintiff's federal claims are timely, we must first ascertain the date on which Plaintiff filed a charge of discrimination with the EEOC.[12] According to Defendant and consistent with this Court's earlier ruling,[13] Plaintiff filed her formal charge on October 22, 2003, the date stamped on Plaintiff's EEOC "Charge of Discrimination."[14] Plaintiff asserts, however, that an ADA questionnaire which she completed and mailed to the EEOC in August of 2003 was sufficient to constitute a "charge" for Title VII and ADA purposes, triggering, if so, an earlier filing date.[15]

---

[11] States may establish agencies with the "authority to grant or seek relief" from discriminatory practices, or "to institute criminal proceedings with respect thereto." See 42 U.S.C. §2000e-5(e)(1). These states are commonly referred to as "deferral states." See Blumberg v. HCA Mgm't Co., 848 F.2d 642, 645 (5th Cir. 1988).

[12] Notwithstanding this Court's previous ruling, in light of newly discovered summary judgment evidence and the fact that the discovery deadline had not passed at the time of that ruling, we will re-examine the issue of when Plaintiff first filed a charge with the EEOC.

[13] Record, Document # 39

[14] Record, Document # 49 exhibit 1

[15] Record, Document # 57 (Plaintiff did not raise this argument in the earlier motion for summary judgment.)

The EEOC's regulations require that "[a] charge shall be in writing and signed and shall be verified."[16] 29 C.F.R § 1601.9. In the regulations, the term verified means "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, *or supported by an unsworn declaration in writing under penalty of perjury.*" 29 C.F.R § 1601.3 (emphasis added). The applicable regulations further state that a charge shall be sufficient "when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the actions or practices complained of." 29 C.F.R § 1601.12(b). Such a sufficient charge is deemed to be filed with the Commission upon receipt[17] of the document. 29 C.F.R § 1601.13a(ii)(A).

On August 8, 2003, Plaintiff mailed her completed ADA questionnaire to her attorney at the time, Mr. Arthur Smith.[18] While the exact date on which Mr. Smith mailed the questionnaire to the EEOC is unknown, the EEOC's date stamp

---

[16] Significantly, unlike Title VII and the ADA's general filing requirements, the EEOC's applicable regulations do not require that a charge be sworn. See 29 C.F.R. § 1601.9(stating that an unsworn statement is sufficient to constitute a charge provided that the statement is *in writing and under penalty of perjury*)(emphasis added); compare 42 U.S.C.§ 2000e-5(b)(charges "filed by or on behalf of a person claiming to be aggrieved . . . shall be in writing under oath or affirmation").

[17] A charge of discrimination may be made in person or by mail to the EEOC. 29 C.F.R. § 1601.8.

[18] Record, Document # 57 exhibit 3

6

appearing on the first page of the questionnaire[19] supports the inference that the EEOC received Plaintiff's ADA questionnaire, at the latest, on August 25, 2003. That questionnaire was signed, dated, and verified[20] by Plaintiff. Moreover, Plaintiff's questionnaire stated with sufficient precision both the identify of the parties, and the actions or practices complained of: namely, that Plaintiff suffered race and disability discrimination in violation of Title VII and the ADA, while employed with Defendant.[21] Therefore, Plaintiff's ADA questionnaire comports with the abovementioned EEOC regulations for filing a charge of discrimination.

Defendant argues that Plaintiff's ADA questionnaire cannot serve as the required charge because Plaintiff was not a *pro se* litigant at the time in which her questionnaire was mailed to the EEOC.[22] In support of this argument, Defendant relies on the Fifth Circuit's ruling in Southwestern Bell v. Price. 877 F.2d 74, 78 (5th Cir. 1982). Defendant's reliance on Price, however, is misplaced. While noting that courts should be mindful of the fact that "laymen" often initiate the filing process in Title VII claims,[23] the Price court based its holding, in large part,

---

[19] Record, Document # 72 exhibit B

[20] While not sworn to or affirmed before a notary public, Plaintiff signed the questionnaire under penalty of perjury. See Record, Document # 57 exhibit 3

[21] Record, Document # 72 exhibit B

[22] Record, Document # 72

[23] See Price, 687 F.2d at 77, n.3

7

on the fact that "the EEOC treated [the] plaintiff's unsworn statement, *supplemented by a sworn statement outside of the limitation period*, as a charge by initiating an investigation and notifying the defendant." See Linton v. City of Marlin, 253 F.3d 706, 708 (5th Cir. 2001)(emphasis added). In the instant case, however, Plaintiff's statement (the ADA questionnaire), though unsworn before a notary, is verified, which, under the applicable EEOC regulations, is tantamount to a sworn statement.[24]

Moreover, a primary consideration for the Price court was the *sufficiency* of the plaintiff's initial unsworn factual statement. Price, 687 F.2d at 78 (5th Cir. 1982). The Price court found that, despite being unsigned and unsworn, the plaintiff's statement sufficiently "informed the EEOC of the identity of the parties and described the alleged discriminatory conduct in enough detail to *enable* it to issue an official notice to [the defendant]." Id (emphasis added).

Likewise, Plaintiff's ADA questionnaire identified the parties and described the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice to Defendant.[25] Not only was the questionnaire sufficient to set the Commission's administrative machinery in motion (by containing the requisite information), Plaintiff's questionnaire is in accord with the applicable federal

---

[24] See 29 C.F.R § 1601.3

[25] See Record, Document # 57 exhibit 3

8

regulations as it is written, signed, and verified.[26]

Defendant next asserts that Plaintiff's questionnaire cannot constitute a timely charge of discrimination because the EEOC did not treat Plaintiff's questionnaire as a formal charge.[27] In support of this assertion, Defendant argues that the EEOC failed to take action until after Plaintiff filed her formal charge of discrimination in late October of 2003.[28] The summary judgment evidence provided, however, does not support Defendant's assertion.

Significantly, because the EEOC provided Defendant with a date stamped copy of Plaintiff's questionnaire, it is reasonable to infer that, following the receipt of Plaintiff's questionnaire, the EEOC started a file on Plaintiff.[29] Furthermore, the EEOC's failure to notify Plaintiff that her questionnaire was insufficient to constitute a charge may imply that the EEOC considered Plaintiff's questionnaire to be more significant than a mere inquiry. Compare Gonzalez v. Hoechst Celanese, 1997 WL 855968, at 6 (S.D. Tex 1997)(the EEOC regarded the plaintiff's unsworn letter as an inquiry, not a charge, because the Commission returned the letter to her stating that they needed more information from her prior to the 300-day deadline); see also Linton, 253 F.3d at 709 (5th Cir. 2001)(holding that while

---

[26] Record, Document # 57

[27] Record, Document # 72

[28] Record, Document # 72

[29] Record, Document # 72 exhibit 3

9

immediate action by the EEOC may be sufficient to infer that an unsworn statement is a charge, immediate action is not necessary); Georgia Power Co. v. EEOC, 412 F.2d 462, 464-66 (5th Cir. 1969) (ruling that the EEOC's failure to take immediate action did not preclude a finding that an unsworn statement may constitute a charge). That is, the EEOC's decision to start a file on Plaintiff following the receipt of her questionnaire and the EEOC's failure to notify Plaintiff that her questionnaire was insufficient to constitute a charge, are inconsistent with the action which would have been taken if the EEOC considered Plaintiff's questionnaire an inquiry, rather than a charge. At a minimum, this creates a genuine issue of material fact as to whether the EEOC considered Plaintiff's questionnaire sufficient to constitute a "charge" within the meaning of Title VII and the ADA. Thus, as Defendant has failed to provide this Court with summary judgment evidence to the contrary, we are compelled to find that Plaintiff's ADA questionnaire, received by the EEOC on August 25, 2003, was sufficient to constitute a charge for her Title VII and ADA claims.[30]

Defendant also asserts that any argument that Plaintiff's ADA questionnaire was sufficient to constitute a "charge" should be barred based on the finding of fact made in this Court's December 22, 2005 ruling.[31] At the time

---

[30] Although titled "ADA questionnaire," Plaintiff's questionnaire also alleges a cause of action against Defendant under Title VII. See Record, Document # 57 exhibit 3

[31] Record, Document # 72

10

of that ruling, however, the discovery deadline had not yet passed, and newly discovered evidence required that we re-examine that ruling. More specifically, Defendant-in his reply to Plaintiff's Memorandum in Opposition to the instant motion-provided this Court with an EEOC date stamped copy of Plaintiff's ADA questionnaire which, for the first time in the record, affirmatively proved that the EEOC *received* Plaintiff's ADA questionnaire.[32] Prior to this submission, the record was devoid of any summary judgment evidence which would have supported a finding that the EEOC received Plaintiff's questionnaire, or any potential "charge," prior to October 22, 2003. Hence, our earlier ruling. Nonetheless, in light of this newly discovered evidence and pursuant to Rule 60(b) of the Federal Rules of Civil Procedure,[33] we set aside the applicable portion of our earlier ruling (which held that Plaintiff's charge of discrimination was filed on October 22, 2003), and we find that Plaintiff's charge of discrimination was filed with the EEOC on August 25, 2003-the date on which the EEOC date stamped Plaintiff's ADA questionnaire.

Next, we consider whether Defendant's allegedly discriminatory

---

[32] See Record, Document # 72 exhibit B

[33] Rule 60(b) provides "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, of excusable neglect; (2) *newly discovered evidence* which by due diligence could not have been discovered in time for a new trial under Rule 59(b) . . . or (6) any other reason justifying relief from the operation of the judgment. Fed. R. Civ. Proc. 60(b)(emphasis added).

employment action took place within 300 days of the filing of Plaintiff's charge. The time limitation period on an employment discrimination claim begins to run from the time that the plaintiff knew or reasonably should have known of the alleged discriminatory act. Manning v. Chevron Chemical Co., 332 F.3d 874, 878 (5th Cir. 2003); citing Vadie v. Miss. State Univ., 218 F.3d 365, 371 (5th Cir. 2000). In other words, the time period for filing an EEOC charge commences at the time of notification of the alleged discriminatory act, not at the time "the consequences become most painful." Chardon v. Hernandez, 454 U.S. 6, 8, 102 S. Ct. 28, 30 (1981). Therefore, with regard to Plaintiff's federal race and disability claims, the date on which Plaintiff knew or reasonably should have known of Defendant's decision to terminate her employment is necessarily the last discriminatory act for which Plaintiff may seek relief. See Delaware State College v. Ricks, 449 U.S. 250, 101 S. Ct. 498 (1980).

Defendant contends that Plaintiff knew or reasonably should have known of the decision to terminate her employment sometime in mid-October of 2002 upon receiving a letter from Larry Brunner (Defendant's Human Resources Manager).[34] In that letter, dated October 9, 2002, Larry Brunner notified Plaintiff that her employment would be terminated by the close of business on December

---

[34] Record, Document # 49

12, 2002, unless her physician lifted her work restrictions.[35] According to Defendant, because: Plaintiff knew that her work restrictions were permanent; she failed to ask her physician to lift her work restrictions; and she began searching for a new job, Plaintiff's federal claims began to accrue from the date on which she received Mr. Brunner's letter.[36] However, for Mr. Brunner's letter to satisfy the knowledge requirement (first announced by the Supreme Court in Ricks) Plaintiff would have had to know (or reasonably should know) that her termination of employment was, at that time, inevitable. See Ricks, 449 U.S. 250, 101 S. Ct. 498 (1980)(holding that the denial of tenure to Mr. Ricks was the last discriminatory act because termination of his employment was a delayed, but inevitable, consequence). The connection between Plaintiff's actions following the receipt of the October 9, 2002 letter and her purported knowledge of Defendant's decision to terminate her employment is simply too attenuated. Notwithstanding the unlikelihood that Plaintiff's work restrictions would be lifted prior to December 12, 2002, Plaintiff's termination of employment from Defendant was not inevitable. On the contrary, the language contained within Mr. Brunner's letter regarding Plaintiff's termination was, at best, conditional, and consequently, the Ricks knowledge requirement is not satisfied. Therefore,

---

[35] Record, Document # 49

[36] Record, Document # 49

13

Plaintiff's receipt of the October 9, 2002 letter should not be considered the last discriminatory act for which Plaintiff could seek relief.

Similarly, Plaintiff's contention that the time limitation period on her employment discrimination claim began to run on the date of her termination is incorrect. The "fact of termination is not itself an illegal act." See Chardon, 454 U.S. 6, 8, 102 S. Ct. 28, 30 (1981); see also Ricks, 449 U.S. 250, 101 S. Ct. 498 (1980)(holding that "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination"). Rather, as mentioned, the time period for filing an EEOC charge commences at the time of notification of the alleged discriminatory act. Regardless of the date of Plaintiff's actual termination, the time limitation on Plaintiff's employment discrimination claim began to accrue on the date on which Plaintiff knew or reasonably should have known her termination was inevitable.

Sometime after December 12, 2002, Plaintiff received a second letter from Mr. Brunner (dated December 12, 2002), which stated "your employment with [Defendant] will be terminated by close of business today."[37] Though Plaintiff admits receiving the letter, she is unable to recall the exact date on which she received the letter.[38] Mr. Brunner mailed that letter to Plaintiff no later than

---

[37] Record, Document # 49 exhibit 7

[38] Record, Document # 49 exhibit 2

14

December 13, 2002.[39] Giving Plaintiff a seven day mail receipt presumption,[40] Plaintiff either knew or reasonably should have known of her termination by December 20, 2002. Therefore, for purposes of Plaintiff's Title VII and ADA claims, the last discriminatory act for which Plaintiff may seek relief occurred on December 20, 2002-the time that Plaintiff knew or reasonably should have known of her inevitable termination.

Because Plaintiff filed her charge of discrimination with the EEOC on August 25, 2003 (well within 300 days of the last discriminatory act), Plaintiff may seek relief for any discriminatory acts occurring after October 28, 2002. Stated differently, Plaintiff is precluded from bringing her ADA and Title VII claims before the Court based on acts which occurred before October 29, 2002-- 300 days before she filed her EEOC charge.[41] For the abovementioned reasons Defendant's motion for summary judgment is DENIED.

SIGNED on this 7th day of November, 2006, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge

---

[39] Record, Document # 49 exhibit 3

[40] The Fifth Circuit has recognized such a presumption. See Taylor v. Books-A-Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002)

[41] See Record, Document # 39

15